**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSK Investments, LLC, an Arizona limited liability company; Keith Ryan, a single man,<br><br>Plaintiffs,<br><br>vs.<br><br>Select Portfolio Servicing, Inc., a Utah corporation; Equicredit Corporation of America, a Florida corporation; Nationscredit Financial Services Corporation, a North Carolina corporation, fka Equicredit Corporation of Arizona; US Bank National Association, an Ohio corporation; First American Title Insurance Company, a California corporation,<br><br>Defendants. | No. CV-10-00452-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the following motions: (1) Motion for Summary Judgment (Doc. 40) filed by First American Title Insurance Company ("First American") and (2) a Motion to Amend/Correct the First Amended Complaint (Doc. 60) filed by Plaintiffs CSK Investments, LLC ("CSK") and Keith Ryan. For the reasons provided below, the Court grants in part and denies in part First American's Motion for Summary Judgment and denies Plaintiffs' Motion to Amend.

**BACKGROUND**

Plaintiffs brought this action related to a series of transactions involving real property located at 3207 North 66th Street, Scottsdale, Arizona 85251 ("the Property"). (Doc. 35; 41, Ex. A). Ryan purchased the Property by a special warranty deed recorded on October 30, 2009. (Doc. 65, Ex. 1). First American served as the escrow agent for Ryan's purchase of the Property, Doc. 40; 65, Ex. 5, and issued a title insurance policy to Ryan upon close of escrow, Doc. 65, Ex. 2. First American did not disclose that EquiCredit Corporation of America ("EquiCredit") had recorded a Deed of Trust against the Property in June 1999 and a Notice of Trustee's Sale for the same property on October 8, 2009. (Doc. 65, Ex. 3 & 4).

On or about November 3, 2009, Ryan conveyed the Property to CSK by a quit claim deed, recorded that same day. (Doc. 65, Ex. 5). Ryan is one of three members of CSK and was required to make an Additional Capital Contribution to the company under the terms of the CSK Operating Agreement. (Doc. 65, Ex. 6). Under that agreement, a member's failure to make an Additional Capital Contribution may result in certain monetary sanctions. (Doc. 65, Ex. 7). Before Ryan and CSK discovered the Trustee's sale, CSK made approximately $50,000 in improvements to the Property. (Doc. 65, Ex. 6). After the Trustee's Sale, Ryan made a claim for his losses, which First American denied. (Doc. 65, Ex. 8). Ryan and CSK subsequently filed this suit.

**DISCUSSION**

**I.     Motion to Amend/Correct First Amended Complaint**

Plaintiffs filed a Motion to Amend/Correct their First Amended Complaint (Doc. 60) after filing a Second Amended Complaint (Doc. 53).[1] Plaintiffs initially argue that they may amend their complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)

---

[1] In their Motion and Response to Defendant's Motion for Summary Judgment, Plaintiffs stipulate to the dismissal with prejudice of certain claims that are the subject of Defendant's pending Motion for Summary Judgment. (Doc. 60; 64). These include (1) negligent misrepresentation and (2) breach of fiduciary duty. Accordingly, those claims are dismissed with prejudice. Attorneys fees incurred by First American in defending these claims will not be deemed waived.

1 because their Second Amended Complaint was filed within 21 days of First American's
2 Answer to their First Amended Complaint. In the alternative, Plaintiffs argue that there is
3 good cause to modify the scheduling order and that in the interest of justice the Court should
4 permit them to file the Second Amended Complaint. Plaintiffs appear to be making this
5 argument because First American and Plaintiffs previously entered into a tolling agreement,
6 "whereby plaintiffs agreed to toll all claims that were or could be made against First
7 American." (Doc. 60). Thus, according to Plaintiffs, they did not learn of First American's
8 positions regarding Plaintiffs' claims until First American filed its Answer to the First
9 Amended Complaint and Motion for Summary Judgment.

10 Rule 15(a)(1) provides that a "party may amend its pleading once as a matter of
11 course" within 21 days after service of a responsive pleading, if the party's pleading is one
12 to which a responsive pleading is required. Plaintiffs interpret this rule as permitting one
13 amendment as a matter of course for each answer filed by a defendant. (Doc. 60). Thus,
14 based on this interpretation, Plaintiffs could file as many amended complaints as there are
15 defendants in a case. Plaintiffs do not cite any case law to support their position, and the
16 Court is not persuaded that Plaintiffs' position is a reasonable interpretation of the rule.
17 Instead, considering the plain language of the statute, the rule permits a plaintiff to amend
18 its original complaint only one time in the course of a case. Otherwise, a plaintiff must obtain
19 the written consent of opposing counsel or leave of the Court to file an additional amended
20 complaint. FED. R. CIV. P. 15(a)(2). This is the position taken by other courts that have faced
21 this issue. *See, e.g., Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203–04 (7th Cir.
22 1985) (pleading that had been amended previously to correct technical errors could not be
23 amended again as of right under Rule 15(a)(1)); *Glaros v. Perse*, 628 F.2d 679, 686 (1st Cir.
24 1980) (rejecting plaintiff's argument that "he was entitled to amend as of right because some
25 defendants had not filed responsive pleadings" when plaintiff had already amended his
26 complaint once before); *see also Burnham v. United States*, 2008 WL 477874, * 1 (D. Ariz.
27 Feb. 19, 2008) (plaintiff was required to seek leave of Court to file a second amended
28 complaint).

1  Even if this interpretation of Rule 15(a)(1) is incorrect, Plaintiffs acknowledge in their
2  motion that the Court entered a Case Management Order (Doc. 26) on June 25, 2010, setting
3  forth a number of deadlines, including the deadline for amending pleadings. Plaintiffs were
4  given 60 days to file an amended complaint. Where a scheduling order is in place, Rule 16(b)
5  controls. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule
6  16(b)(4) states that a "schedule may be modified only for good cause and with the judge's
7  consent." *See also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).
8  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party
9  seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s
10 'good cause' standard primarily considers the diligence of the party seeking the amendment."
11 *Johnson*, 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and
12 offers no reason for a grant of relief." *Id.* The focus of the Court's inquiry is on Plaintiffs'
13 reasons for seeking modification. *Id.* If Plaintiffs have not been diligent, the inquiry ends and
14 the motion is denied. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

15 Plaintiffs assert that good cause exists to modify the deadlines set by the Court
16 because they were unable to discover First American's position on certain claims until First
17 American filed its Motion for Summary Judgment in connection with the First Amended
18 Complaint. (Doc. 60). Plaintiffs also contend that modifications that appear in the Second
19 Amended Complaint "streamline[] the litigation" and "do not alter the nature of the claims."
20 (*Id.*). Moreover, Plaintiffs assert that Defendant's Answer and Motion "assisted Plaintiffs in
21 making a minor modification" to their theory of breach of the covenant of good faith and fair
22 dealing, which is reflected in the Second Amended Complaint.

23 Plaintiffs noted in the Joint Case Management Report filed on June 16, 2010, that they
24 would amend their pleadings only if they decided to terminate the tolling agreement with
25 First American. (Doc. 22). Plaintiffs asserted that they were considering rejoining First
26 American to the litigation, and therefore, presumably would amend their Complaint to add
27 additional claims. Fully aware of this issue before the Court established deadlines in its Case
28 Management Order, Plaintiffs nonetheless waited until the last moment to file their First

- 4 -

1  Amended Complaint. Plaintiffs could have filed the Complaint earlier to ensure that they
2  would have sufficient time to make additional amendments, if necessary. Plaintiffs' failure
3  to take into consideration the Court's deadlines, to which they agreed, does not establish
4  good cause for an extension.

5  Moreover, Plaintiffs cannot argue that the changes reflected in the Second Amended
6  Complaint could not have been incorporated into their First Amended Complaint through
7  reasonable diligence on their part. The proposed modifications at issue relate to the claims
8  of indemnity and breach of the covenant of good faith and fair dealing. To the indemnity
9  claim, Plaintiffs (1) add that First American's subsequent breach of the title policy caused
10 Ryan to breach his contract with CSK; (2) assert that Ryan was not at fault in conveying a
11 "worthless" property to CSK; (3) clarify that Ryan is asserting a claim for contractual as well
12 as common law indemnity; and (4) assert that First American has failed to defend him from
13 CSK's cross-claim. (Doc. 60, Ex. B). With respect to the breach of the covenant of good faith
14 and fair dealing claim, Plaintiffs (1) modify the claim so that it focuses on First American's
15 role as provider of a title insurance policy sold to Ryan, rather than its role as an escrow
16 agent; (2) assert that Defendant had a duty to ensure that Ryan received the benefits of its
17 title insurance policy (rather than the benefits of its escrow agreement); and (3) assert that
18 Defendant breached its duty by denying Ryan coverage and by taking the position that Ryan
19 has not been damaged as a result of the EquiCredit Deed of Trust and EquiCredit Notice. The
20 proposed modifications involve facts and theories that Plaintiffs could have anticipated
21 before the deadline set forth in the Court's Order. The fact that it did not occur to Plaintiffs
22 to make certain arguments regarding Ryan's title insurance policy, for instance, rather than
23 focusing on the escrow agreement, until Defendant filed its Answer and Motion does not
24 constitute good cause. Accordingly, Plaintiffs' Motion to Amend is denied.

25 **II.     Motion for Summary Judgment**
26     **A.     Legal Standard**
27 Summary judgment is appropriate if the evidence, viewed in the light most favorable
28 to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact

- 5 -

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[I]f the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Moreover, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

**B. Indemnity**

In the First Amended Complaint, Plaintiff Ryan contends that his conveyance of the Property is essentially worthless as a result of First American's conduct. (Doc. 35). He asserts that he relied upon Defendant to disclose the EquiCredit Deed of Trust and EquiCredit Notice to him, and Defendant's failure to do so caused Ryan to breach his contract with CSK. Plaintiff asserts that Defendant must indemnify him for any judgment entered against him in connection with CSK's breach of contract claim against him.

To the extent that Plaintiff Ryan is asserting a common law claim for indemnity against First American, he must show that (1) he has discharged a legal obligation owed to a third party; (2) the indemnity defendant was also liable to the third party; and (3) as between himself and the defendant, the obligation should have been discharged by the defendant. *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 303 n.2, 197 P.3d 758, 764 n.2 (App. 2008). Defendant argues that Plaintiff cannot raise an issue of material fact as to any of these three elements, and in fact, is simply arguing his breach of the title insurance contract claim in the guise of an indemnity claim. The Court agrees.

In his Response, Ryan argues that summary judgment on his indemnity claim is inappropriate because his Second Amended Complaint "clarifies" that he is entitled to indemnity by contract from First American for its breach of contract and failure to defend him from CSK's cross-claim. Because the Court has denied Plaintiffs' Motion to Amend the

1  Complaint and Plaintiffs raise these theories for the first time in the Response, the Court does
2  not consider these additional arguments. *See Stallcop v. Kaiser Found. Hosps.*, 820 F.2d
3  1044, 1050 n.5 (9th Cir. 1987) (Ninth Circuit could not consider a claim raised only in a
4  response to the defendant's motion for summary judgment, but never as a cause of action).
5  With regard to his common law indemnity claim, Ryan fails to argue either in his First
6  Amended Complaint or in his Response that First American was liable or owed some duty
7  to CSK. *See* RESTATEMENT (FIRST) OF RESTITUTION § 76 (1937) (The rule of indemnity
8  "applies where two or more persons are subject to a duty to a third person either as joint
9  promisors or otherwise, under such circumstances that one or more of them, as between
10 themselves, should perform it rather than the other."). Moreover, he fails to demonstrate that
11 there is a genuine issue of material fact as to any of the three required elements of a common
12 law indemnity claim. Accordingly, summary judgment is proper as to this claim.

**C.   Breach of Contract**

14 Defendant contends that summary judgment is appropriate with regard to Ryan's
15 breach of contract claim because Ryan has failed to set forth any facts that demonstrate he
16 has suffered an actual loss as a result of the breach. (Doc. 40). Defendant concedes that the
17 policy would cover Ryan in the event that someone else owned an interest in his "Title",
18 defined in the policy as his "ownership interest in the Property." (Doc 40; 41, Ex. A).
19 However, once Ryan conveyed the Property to CSK, he could no longer suffer any actual
20 loss.[2]

21 Plaintiff claims he has suffered actual loss because had he known that there was a title
22 defect, he would never have purchased the Property and used it to satisfy his obligation to
23 CSK. (Doc. 64). Specifically, Ryan argues that as a result of the title defect, he now faces

---

[2] First American additionally argues in its Reply that Plaintiff failed to show that an actual loss resulted from any of the Covered Risks. (Doc. 67). Thus, Defendant seems to argue that there was no breach of the policy because the policy only covers actual loss resulting from a Covered Risk. Because First American did not raise this issue in its Motion, the Court will not consider it here. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

- 7 -

1  liability to CSK in the form of contract damages prescribed by the CSK Operating
2  Agreement and the amount CSK expended to improve the Property. Ryan asserts that under
3  the Policy, Defendant has insured him "against actual loss, including any costs, attorneys'
4  fees and expenses provided under this Policy, resulting from the Covered Risks" listed in the
5  policy. The Covered Risks at issue here are Number 8, that "Someone else has a lien on Your
6  Title, including a [] Mortgage" and Number 9, that "Someone else has an encumbrance on
7  Your Title." (Doc. 65, Ex. 2). Ryan relies on policy language that provides: "This Policy
8  insures You forever, even after You no longer have Your Title." (*Id.*). Defendant responds
9  that coverage continues beyond conveyance only under limited circumstances addressed by
10 the policy. (Doc. 67).[3]

11  "A party moving for summary judgment must initially identify 'those portions of the
12 pleadings, depositions, answers to interrogatories, and admissions on file, together with the
13 affidavits, if any, which it believes demonstrate the absence of a genuine issue of material
14 fact.'" *F.T.C. v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (quoting *Celotex*, 477 U.S. at
15 323). If the nonmoving party bears the burden of persuasion at trial, the party moving for
16 summary judgment may meet this initial burden by "submitting affirmative evidence that
17 negates an essential element of the nonmoving party's claim or by demonstrating to the court
18 that the nonmoving party's evidence is insufficient to establish an essential element of the
19 nonmoving party's claim." *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d
20 563, 574 (9th Cir. 1990). First American has failed to meet its initial burden of demonstrating
21 the absence of a genuine issue of material fact as to Plaintiff's actual loss. Citing *Swanson*
22 *v. Safeco Title Ins. Co.*, 186 Ariz. 637, 640, 925 P.2d 1354, 1357 (App. 1995), First
23 American simply argues that because Ryan did not have an ownership interest in the Property

---

[3] First American asserts that it would have covered Ryan if he had conveyed title to CSK by a warranty deed, warranting that he had valid title, or if he had retained an interest in the Property through a seller carry-back deed of trust. In such a case, had Ryan lost his deed of trust interest because of the EquiCredit Deed of Trust, then he would have suffered an actual loss covered under the policy. (Doc. 67). Defendant does not point to any specific language in the policy that limits post-conveyance coverage to these situations.

- 8 -

1  at the time the title defect was discovered, he suffered no actual loss.

2  Ryan's title insurance policy specifically states that the policy insures him "forever, 3 even after [Ryan] no longer [has his] Title." (Doc. 65, Ex. 2). First American may have 4 intended that provision to only apply under certain circumstances, however, as written, the 5 provision is quite broad. Under Arizona law, ambiguity in an insurance contract is strictly 6 construed against the insurer. *Sec. Ins. Co. of Hartford v. Andersen*, 158 Ariz. 426, 428, 763 7 P.2d 246, 248 (1988). The policy further states that it "covers Your actual loss from any risk 8 described under Covered Risks if the event creating the risk exists on the Policy Date." (Doc. 9 65, Ex. 2). "Actual loss" is not defined anywhere in the policy. Moreover, the policy does 10 not state that the Covered Risk must exist on the date the title defect is discovered. Here, the 11 record shows that the title defect existed on the policy date, and the policy issued by First 12 American did not disclose that defect. In addition, Ryan has identified an applicable Covered 13 Risk and the policy states that he is covered forever, even if he no longer has title. Thus, First 14 American's argument that Ryan is not covered by the policy because he conveyed the 15 Property to CSK fails by the terms of the policy.

16  The question that remains is whether Ryan will be able to show that he suffered 17 "actual loss" resulting from a Covered Risk. Both parties agree that *Swanson* sets out the 18 standard for measuring "actual loss." (Doc. 64). In *Swanson*, the Arizona Court of Appeals 19 described "actual loss" as ambiguous and interpreted it to mean "the difference between the 20 fair market value of the property if no impairment existed and the fair market value of the 21 property with the impairment." 186 Ariz. at 640–41, 925 P.2d at 1357–58. Defendant 22 interprets *Swanson* to mean that, contrary to the language of Ryan's policy, Ryan is required 23 to hold an interest in the Property at the time the defect is discovered. (Doc. 67). The Arizona 24 Court of Appeals did not specifically address this issue, and the Court declines to extend 25 *Swanson*'s holding in this way. Ryan has asserted that he paid $117,000 for worthless 26 property. (Doc. 64). He used the Property to satisfy his obligation to CSK. Because of the 27 title defect, Ryan claims that he has suffered an actual loss at least as great as the value of the 28 Property, which is reflected in the decrease of his CSK Capital Account. (*Id.*). Contrary to

- 9 -

1 Defendant's assertions, the loss claimed is Ryan's loss, not CSK's. Moreover, Defendant has
2 not presented any evidence that shows that CSK's claim against Ryan for breach of contract
3 is a "sham." Because Defendant has failed to initially demonstrate a lack of genuine issue of
4 material fact, Defendant's motion for summary judgment on the breach of contract claim is
5 denied.

### D. Breach of Covenant of Good Faith and Fair Dealing

Plaintiff Ryan also asserts a claim for the breach of the covenant of good faith and fair dealing, which he explicitly states "is brought in contract, not tort." (Doc. 63). "Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). The implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.*; *see also Kuehn v. Stanley*, 208 Ariz. 124, 132, 91 P.3d 346, 354 (App. 2004). Whether a party's actions constitute a breach of the implied covenant is a question of fact. *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, 214 P.3d 415, 421 (App. 2009) (citing *Wells Fargo*, 201 Ariz. at 493, 38 P.3d at 31).

Plaintiff asserts that he entered into an escrow agreement with First American, and that First American breached its duty of good faith and fair dealing under this agreement by failing to disclose information regarding the EquiCredit Deed of Trust and the EquiCredit Notice. (Doc. 35).[4] As a result, Ryan was deprived of information that First American knew or should have known would prevent him from receiving the benefits of the escrow agreement. Ryan also contends that First American breached its duty by failing to explain to him that, if he transferred his interest in the Property to CSK, First American would claim

---

[4] In Plaintiffs' Second Amended Complaint, Plaintiffs "clarify matters" by referring to the title insurance policy, rather than the escrow agreement, as the source of the duty and the contract breached by First American. Because the Court is denying Plaintiffs' Motion to Amend (Doc. 60), the Court will not consider Plaintiff Ryan's breach of covenant of good faith argument in his Response to the extent that it relies on the title insurance policy.

- 10 -

1 that such transfer effectively voided any title insurance purchased by Ryan. Defendant
2 responds that the implied covenant "does not include 'protection in excess of that which is
3 provided for in the contract, nor . . . anything inconsistent with the limitations contained in
4 the contract.'" (Doc. 40 (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571
5 (1986))). Thus, according to Defendant, the alleged "duty to research, discover, and report
6 title defects" "goes beyond an escrow function." (*Id.*).

7 In his Response, Plaintiff asserts "even assuming *arguendo* that escrow agreements
8 generally do not create a duty to disclose title defects, here First American was acting
9 concurrently as escrow agent and title insurer, and had actually researched title defects."
10 (Doc. 64). Arizona courts have made clear that there is a "fundamental difference between
11 escrow services and title searches." *Tucson Unified Sch. Dist. v. Chi. Title Ins. Co.*, 167 Ariz.
12 114, 116, 804 P.2d 843, 845 (App. 1991). An escrow agent "is merely a 'stakeholder' [who]
13 properly executes his duties only as they are set out by the terms of the escrow agreement."
14 *Id.* (citing *Miller v. Craig*, 27 Ariz.App. 789, 558 P.2d 984 (1976)). Plaintiff does not provide
15 any additional argument in his Response specific to the escrow agreement. Plaintiff does not
16 cite to any specific section of the escrow agreement that would suggest that First American,
17 as an escrow agent, owed Plaintiff a duty to disclose information about the EquiCredit Deed
18 of Trust and Notice. Nor has Plaintiff demonstrated that First American had any knowledge
19 regarding EquiCredit, and if it did not, that First American, nonetheless, owed a duty to
20 "research, discover, and report title defects" under the terms of the escrow agreement.
21 Because Plaintiff has failed to present any facts that show that Defendant owed such a duty
22 under the escrow agreement, no reasonable jury could return a verdict in favor of Plaintiff
23 on this claim.[5] Accordingly, summary judgment is appropriate as to this claim.

---

25 [5] In Plaintiffs' First Amended Complaint, Ryan in one instance refers to the title
26 insurance policy, asserting that First American breached its duty for "failing to disclose to Keith Ryan that if he transferred his interest in the Property to CSK that First American
27 would take the position that such transfer effectively voided any title insurance that was purchased for Keith Ryan. (Doc. 35). Even if the Court assumes that First American failed
28 to explain how it would interpret certain terms of the contract, that fact does not state a claim

**IT IS THEREFORE ORDERED:**

1. First American's Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**;

2. Plaintiffs' Motion to Amend First Amended Complaint (Doc. 60) is **DENIED**.

DATED this 29th day of March, 2011.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge

---

of breach of the contractual covenant of good faith, which requires Ryan to show that First American is acting in a way that denies him the right to receive the benefits that flow from the title insurance policy. *See Rawlings*, 151 Ariz. at 153, 726 P.2d at 569. This assertion is more appropriately addressed by Ryan's breach of contract claim.