**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSK Investments LLC, an Arizona limited liability company; Keith Ryan, a single man,<br><br>Plaintiffs,<br><br>vs.<br><br>Select Portfolio Servicing, Inc., a Utah corporation; et al.,<br><br>Defendants.<br>_____<br>CSK Investments LLC, an Arizona limited liability company,<br><br>Cross-Claimant,<br><br>vs.<br><br>Keith Ryan,<br><br>Cross-Defendant.<br>_____ | No. CV-10-452-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Plaintiff Keith Ryan's Motion for Summary Judgment against Defendant First American Title Insurance on Count Five of the First Amended Complaint (Doc. 90), CSK Investment, LLC's Motion for Summary Judgment on its Cross-Claim against Cross-Defendant Keith Ryan on Count Three of the First Amended Complaint (Doc. 92), and First Title Insurance Company's Request for Oral Argument on Pending Motions for Summary Judgment. (Doc. 116). For the reasons discussed below, Plaintiff CSK Investment's motion against Plaintiff Ryan is granted, Plaintiff Ryan's motion against First

American is granted, and the requests for Oral Argument are denied.[1]

**BACKGROUND**

On October 30, 2009, Plaintiff Keith Ryan purchased a property located at 3207 N. 66th Street, Scottsdale, Arizona ("the property") for $117,000 in cash. (Doc. 91, Ex. 4 ¶ 2). Prior to purchase, Ryan had obtained title insurance from Defendant First American Title Insurance Company ("First American"). (Doc. 91, Ex. 1). The policy specifically provides that it insures Ryan "forever, even after you no longer have your Title." (*Id.*). It further states that it "covers Your actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date." (*Id.*). Among the Covered Risks, the policy includes "8. Someone else has a lien on Your Title, including a [ ] Mortgage," and "9. Someone else has an encumbrance on Your Title." (*Id.*).

Ryan was and continues to be a member of CSK Investments, LLC ("CSK"). Pursuant to the CSK Operating Agreement, Ryan was required to make additional capital contributions. (Doc. 93, Ex. 1 ¶ 2.2). On November 2, 2009, Ryan conveyed the property to CSK by quitclaim deed. (Doc. 96, Ex. A). CSK credited Ryan's Capital Account with $117,000 in exchange for delivering the property. (Doc. 93, Ex. 2 ¶ 4). After Ryan delivered the property and his capital account was credited, CSK spent money improving the property. (Doc. 93, Ex. 2 ¶ 6). Unbeknownst to Ryan or CSK, EquiCredit Corporation of America ("EquiCredit") had recorded a Deed of Trust on the property in June of 1999. (Doc. 91, Ex. 2). On January 7, 2010, EquiCredit noticed a trustee's sale of the property, and the property was subsequently sold. (Doc. 91, Ex. 3). Ryan filed a claim on his title insurance policy, which First American denied. (Doc. 42 ¶ 7).

On April 13, 2011, the members of CSK voted to enforce the provisions of Section

---

[1] All three parties requested oral argument, and Defendant First Title reiterated its request on October 18, 2011. These requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  2.2 of the Operating Agreement against Keith Ryan. (Doc. 93, Ex. 5). As a result, CSK sent Ryan a demand letter for payment of the purchase price of the property, interest, the costs of improvement, and legal fees, for a total of $236,122.86. (*Id.*). It suspended his right to receive distributions until the amount is paid in full. (*Id.*).

Ryan filed this lawsuit against First American and others in Maricopa County Superior Court, and it was removed to Federal Court on March 1, 2010. (Doc. 1). CSK filed a cross-claim against Ryan for breaching the Operating Agreement on August 25, 2010. (Doc. 35 at 11). First American filed for summary judgment against Ryan, claiming that because he had conveyed the property to CSK in exchange for the increase in his capital account, he had suffered no loss; the Court denied summary judgment on that ground, and granted summary judgment on grounds not relevant to the current motion. (Doc. 81). CSK now moves for summary judgment on its cross claim and Ryan moves for summary judgment on his breach of contract claim against First American. (Docs. 90, 92).

**DISCUSSION**

**1.  Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248).

**2.  Analysis**

    **a.  Allegation of a "Sham"**

Defendant asserts that CSK's cross-claim against Ryan is an "obvious sham being orchestrated by CSK and Keith Ryan as evidenced by their lawyers' obvious conflict of

interest." (Doc. 95 at 3). It argues that because CSK's current counsel originally represented CSK and Ryan before CSK filed a cross-claim against Ryan, Ryan has "blindly ignore[d] common sense and the ethical rules" by consenting to the representation. (*Id.* at 4). It is possible, although not apparent, that Ryan's former lawyer is violating the requirements of the Rules of Professional Conduct by representing CSK against him, if the conflict is one which cannot be waived by written consent or if the lawyer has not obtained written consent. First American, however, offers no fact to dispute that Ryan has incurred a loss by transferring to CSK property that has proved to have far less value than the amount by which his capital account was credited, or that CSK is now attempting to recoup the difference in value. In the absence of any such facts, alleged ethical violations by Ryan's former attorney do not constitute a material facts preventing summary judgment in favor of either CSK or Ryan.

### b. CSK's Motion for Summary Judgment against Keith Ryan

First American is not a party to the dispute between CSK and Ryan, but has nevertheless filed a response to CSK's motion for summary judgment against Ryan. (Doc. 95). In Ryan's response to CSK's motion for summary judgment, he incorporates a significant argument from First American's response. (Doc. 97 at 2).[2] Ryan otherwise writes that he "cannot dispute the facts or law set forth in CSK's Motion." (Doc. 97 at 1).

CSK alleges that Ryan, in conveying property encumbered by a mortgage, breached the Operating Agreement, which states that "[t]he obligation to make Additional Capital Contributions shall be a personal obligation of each Member and shall be enforceable by the Company and each of its Members." (Doc. 93, Ex. 1 ¶ 2.2). Ryan, incorporating First

---

[2] Ryan characterizes Section II(A)(2), which he incorporates, as arguing "that for equitable reasons CSK should not be entitled to recover damages from Keith Ryan caused by his breach of the Operating Agreement or alternatively that damages should be limited to the amount that First American pays Ryan under the policy." (Doc. 97 at 2). The cited section in fact argues that "CSK has no right to recover against Keith Ryan based upon a quit claim deed following discovery of an undisclosed encumbrance." (Doc. 95 at 4). The Court will consider the argument Ryan cites, regardless of how he describes it.

American's argument, argues that CSK did not demand title warranties from him, did not obtain title insurance, and accepted the property by quitclaim deed, and therefore cannot recover against Ryan based on any deed warranties. (Doc. 95 at 4–6). For this proposition, he relies upon *Bianconi v. Smith*, 3 Ariz. 320, 28 P. 880 (1892), which dismissed a fraud claim alleging that one party had falsely represented to another that he owned a parcel of land before accepting money for a quitclaim deed to that land. The claim in *Bianconi* was made "upon the ground of false and fraudulent representations," and the Court held that fraud claims pertaining to land transfers can only be brought "when they relate to some matter collateral to the title and the right of possession, or relate to some matter connected with the title within the peculiar knowledge of the vendor, and not otherwise." *Bianconi*, 3 Ariz. at 325. CSK is not bringing a fraud claim against Ryan, and therefore *Bianconi* is not controlling.

Ryan next argues that the recorded Deed of Trust put CSK on notice that the property was encumbered. "The record of a grant, deed or instrument in writing authorized or required to be recorded, which has been duly acknowledged and recorded in the proper county, shall be notice to all persons of such grant, deed or instrument." Ariz. Rev. Stat. ("A.R.S.") § 33-416 (2007). A Deed of Trust is such an instrument and provides constructive notice to a purchaser. *Watson Const. Co. v. Amfac Mortg. Corp.*, 124 Ariz. 570, 576, 606 P.2d 421, 427 (App. 1979). Ryan provided CSK with the property by quit claim deed in exchange for a $117,000 credit to his account. CSK asserts that the agreement to credit the account in exchange for the property was a contract, and one whose terms cannot be retroactively altered now that it is apparent that the property was worth less than the consideration provided. CSK's subsequent discovery of the defect in title does not provide grounds for it to sue Ryan based on the quit claim deed.

CSK is not, however, suing on the deed, or for that matter on the exchange of property for credit itself. It is instead seeking to enforce the Operation Agreement, an ongoing contract between Ryan and CSK. Under the agreement, CSK's members agree "to make Additional Capital Contributions per member to pay the obligations of the Company." (Doc. 93, Ex. 1

¶ 2.2). The property that Ryan deeded to CSK was encumbered by a mortgage that exceeded its purchase price: it was not "Capital" and could not be used to "pay the obligations of the Company." The Operation Agreement states that "[t]he obligation to make Additional Capital Contributions shall be a personal obligation of each Member and shall be enforceable by the Company and each of its Members." (*Id.*). CSK has enforced Ryan's personal obligation by debiting his Capital Account. (Doc. 93, Ex. 5) Notably, the Operation Agreement states that, "[t]he failure of a Member to make an Additional Capital Contribution constitutes a material breach of this Agreement." (*Id.*). Whatever meeting of the minds CSK and Ryan had subjectively when he conveyed the property, he did not fulfil his obligations under the Operating Agreement, because he did not provide a "Capital Contribution." He therefore breached the terms of the Operating Agreement.

First American argues that CSK cannot sue for breach of the Operating Agreement, because when Ryan transferred the property by quit claim deed, the Operating Agreement "merged" with the tendered deed. "It is settled that the acceptance of a deed tendered in performance of an agreement to convey merges the written or oral agreement to convey the deed, the agreement to convey being discharged." *Hueg v. Sunburst Farms (Glendale) Mut. Water and Ag. Co.*, 122 Ariz. 284, 288, 594 P.2d 538, 542 (App. 1979). Ryan does not incorporate this argument in his response to CSK, but in any event it is not applicable. The merger doctrine has "several exceptions," one of which requires determination of "whether the parties intended the acceptance of the deed as full performance of the entire preliminary contract." *Title Ins. Co. of Minnesota v. Costain Arizona*, 164 Ariz. 139, 142, 387 P.2d 1019, 1021 (App. 1990). The "entire preliminary contract," which here is the Operation Agreement, contains many provisions in addition to the requirement that members make Additional Capital Contributions. Providing the quit claim deed was not full performance of Ryan's obligations under the Operation Agreement, and the merger doctrine therefore does not apply.

It is not disputed that Ryan deeded the property in partial fulfilment of his obligations under CSK's Operation Agreement. It is further not disputed that the property was

encumbered by a mortgage exceeding the purchase price at the time it was transferred. Since it was so encumbered, it did not qualify as a capital contribution under the Operation Agreement, which CSK has the right to enforce. Summary judgment is therefore appropriate for CSK against Ryan for breach of the Operation Agreement.

CSK alleges that Ryan's breach caused it additional damage beyond the credit provided to his capital account, including the costs of improvements made by CSK, interest at the annual rate of 15%, and expenditures lost in attempting to recoup the value of the delinquent distribution. (Doc. 102 at 7). Genuine issues of material fact remain as to whether these additional alleged costs are in fact damages resulting from Ryan's breach, and no decision as to damages will be made at the summary judgment phase.

### c. Ryan's Summary Judgment Motion against First American

First American argues that Ryan cannot show "actual loss," because any loss associated with the encumbrance on the title is CSK's loss, and Ryan has been fully compensated for the property by CSK. (Doc. 95 at 7–8). The Court has previously noted that, by the policy's terms, an encumbrance on the property is a Covered Risk and that Ryan "is covered forever, even if he no longer has title." (Doc. 81 at 9). It has further noted that the loss in Ryan's CSK's capital account is "Ryan's loss, not CSK's." (*Id.* at 10). CSK has now debited Ryan's capital account, and summary judgment has been entered in CSK's claim that Ryan breached the Operating Agreement. Ryan has therefore suffered actual loss.

Next, First American argues that by inadequately defending against the cross-claim from CSK, Ryan has "created, allowed, or agreed" to the loss, and therefore should not be covered under the policy's exclusion number four. (Doc 91, Ex. 1 at 2). It should be noted that Ryan incorporated First American's argument in his response to CSK's motion for summary judgment, and therefore did defend against the motion. (Doc. 97 at 2). Moreover, the full language of the exclusions section in the policy reads as follows:

> In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from: . . .
> 4. Risks:
> a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records

(Doc 91, Ex. 1 at 2)

The policy, by its terms, does not exclude all loss caused by the policyholder, but loss *caused by risks* that are "created, allowed, or agreed to" by the policyholder. The reference to whether the risks appear in the Public Records reinforces the fact that this section refers not to all losses, but only to those covered risks (such as encumbrances) which the policyholder created or consented to. The Covered Risk in this case was the previous mortgage that encumbered the property when Ryan purchased it. First American makes no allegation that Ryan created or consented to that mortgage, though it does not deny that it was listed in the public records at the time that it issued Ryan a title insurance policy. Since the Covered Risk was not created or consented to by Ryan, First American cannot rely on section four of the policy's Exclusions to deny its obligation to cover Ryan's loss.

First American finally argues that any loss Ryan suffered was caused by Ryan's contractual dealings with CSK, not by the encumbrance on the title. (Doc. 95 at 8–9). Ryan's capital account was debited, and CSK filed a cross-claim against Ryan, because Ryan did not satisfy his contractual obligations under the Operating Agreement. Ryan breached the contract because his contribution was worthless; the contribution was worthless because "[s]omeone else [had] a lien on [Ryan's] Title," which is a Covered Risk under the policy. (Doc. 91, Ex. 1). It is not disputed that the Deed of Trust clouded the title at the time Ryan obtained title insurance from First American, and that First American did not discover the encumbrance. The loss was not caused by Ryan's contractual dealing, but by the encumbrance on his title which went undetected by his title insurance provider.

There is no issue of material fact that Ryan suffered a loss caused by a Covered Risk in his policy. First American is therefore liable on the policy. As with Ryan's obligation to CSK, however, material questions remain as to the damages amount. In Arizona, damages owed by a title insurer are calculated as "the difference between the fair market value of the property without the lien and the fair market value with the lien." *Swanson v. Safeco Title Ins. Co.*, 186 Ariz. 637, 641, 925 P.2d 1354, 1358 (App. 1995). At the trustee's sale, the property sold for $99,814.84, while the amount of the unpaid debt was $125,554.51. (Doc.

96, Ex. C). First American notes that the policy limit is $117,000, along with a 10% annual adjustment. (Doc. 91, Ex. 1 at 4). Whether the trustee's sale represents the fair market value of the property without the lien is a material question of fact, but in no instance may First American be liable for more than the policy limit.

**CONCLUSION**

First American has alleged that CSK's cross-claim is a "sham," but other than noting a possibly waivable conflict, has provided no evidence of such. CSK has alleged that Ryan breached the company's Operating Agreement by providing worthless property as a capital contribution. Contrary to First American's characterization, the claim is not brought as a challenge to the quitclaim deed, and is not merged into the quitclaim deed. Although material questions remain as to the amount of CSK's damage, summary judgment in favor of CSK is appropriate under the terms of the Operating Agreement. Likewise, since Ryan suffered loss caused by a Covered Risk in his policy, summary judgment against First American is appropriate. Again, since material questions remain as to the amount of the damages, summary judgment will not be awarded as to the damages themselves.

**IT IS THEREFORE ORDERED**:

1. Plaintiff CSK's Motion for Summary Judgment (Doc. 92) on the cross-claim against Plaintiff Ryan (Count Three) is **granted**.

2. Plaintiff Ryan's Motion for Summary Judgment (Doc.90) on the claim against First American Title Insurance (Count Five) is **granted**.

3. Defendant First American Title's Motion for a Hearing (Doc. 116) is **denied**.

DATED this 18th day of January, 2012.

/G. Murray Snow
United States District Judge